**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **NORTH HARTLAND, L.L.C.,** | **:** |
| **PLAINTIFF** | |
| **V.** | **: NO. 06-495-C** |
| **UNITED STATES** | |
| **(RURAL UTILITIES SERVICE),** | **: Judge C. Miller** |
| **DEFENDANT** | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO DISMISS/ALTERNATIVE SUMMARY JUDGMENT MOTION ON PRIVITY STANDING AND REAL PARTY CAPACITY**

Introduction

Defendant United States' motion should be denied. Though styled as a jurisdictional motion, the government's memorandum goes well beyond the pleadings and actually is an alternative summary judgment motion attacking North Hartland's privity standing and real party in interest capacity under RCFC 17. Even resorting to the documents outside the pleadings, this Court will see that in ¶13 of the 2005 Assignment Agreement that plaintiff North Hartland reserved its rights to claim damages against the RUS based on the 1999 Asset Purchase Agreement between plaintiff and the Government signatories. Summary judgment is really appropriate for plaintiff on this privity/standing issue, or is otherwise premature as the government and the private assignee have not yet responded to plaintiff's discovery requests.

Not qualifying as a true motion challenging jurisdiction, the United State motion cannot go beyond the facts pleaded in the Complaint, nor can the government's motion

upset the RCFC 12 axiom that the averments in the Complaint–and inferences to be drawn from them--must be assumed to be true in evaluating a proper Rule 12 motion to dismiss. Conley v. Gibson, 355 U.S. 41, 45 (1957).

The plaintiff is entitled to plead his own version of his corporate standing to sue the United States for bad faith breach of a 1999 contract for the government to sell the plaintiff a hydro power asset in Vermont. Defendant's picking bits and pieces out of two confidential 2005 assignment agreements between plaintiff and a third party to cobble an argument that plaintiff sold or lost his 1999 asset purchase rights, is repudiated by ¶s 58-60 of the Complaint. These well-pleaded facts establish that the present North Hartland LLC (of Virginia) is the successor to the original purchaser party to the 1999 contract with the U.S. government to acquire the Vermont hydro electric plant, FERC No. 2816, and retains the right to claim damages against the United States.

Argument

1. **The Well-Pleaded Privity Standing Trumps the Two, 2005 Assignment Documents Involving the Assignee Purchaser, Which Are Not Pleaded in or Incorporated into the Complaint**.

Defendant's ponderous analysis of the 2005 Assignment documents is completely rebuffed by the axiom that the allegations in the Complaint and inferences to be drawn from them must be accepted as true and valid, and are to be interpreted in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974). The real party and privity capacity of

this plaintiff to sue the government for damages even after the 2005 assignment, is more than well pleaded. This Court should accept plaintiff's allegations that the 2005 assignment was limited and preserved the plaintiff's rights to sue for damages on the 1999 asset purchase agreement with the United States, Rural Utilities Service. Page 25 of the Complaint has a label preceding ¶58 stating: "Limited Assignment in 2005 of Purchase Rights By Plaintiff", with pleading as follows:

> 58. Prevented from closing by defendant United States and RUS's breach of contract, lack of best efforts, interference in plaintiff's standing and advocacy before FERC and Vermont regulatory agencies, and alternatively, fraud and misrepresentation, plaintiff Hartland-Contech was compelled in 2005 to make a partial assignment limited to its purchase rights under the 1999 Asset Purchase Agreement, to another purchaser, for consideration well less than the 1999 or 2005 value of the asset.
>
> 59. Plaintiff's contract rights and other legal remedies against RUS were reserved and not assigned. Any documents signed by Hartland-Contech in this assignment for consideration preserved and did not waive or release, any or all claims and causes of action on behalf of Hartland-Contech against the United States and RUS, or against any other party liable to Hartland-Contech pursuant to the breached 1999 Asset Purchase Agreement. Nor did any action of plaintiff ratify or waive any breach of contract by defendant pleaded herein.
>
> 60. All cause of action and claims for damages against the United States and RUS are preserved and reserved by plaintiff, and are viable. The assignment by plaintiff of its rights to purchase the subject hydro-electric plant did not waive plaintiff's causes of action for damages against defendant RUS, nor did plaintiff's assignment waive remedies for, or ratify, any action or misconduct of RUS.

Against this well-pleaded capacity of plaintiff to sue for breach of the 1999 Asset Purchase Agreement, the defendant's arguments–which are really opinions--based on the

2005 Assignment documents, which the Government was not a drafter of or signatory to, must be rejected as a matter of law. An argumentative interpretation of a discovery document cannot meet the Conley v. Gibson, 355 U.S. 41, 45 (1957), standard of the defendant having to show that no facts support the Complaint allegation of privity standing to sue the United States. This dispute as to ¶s 58-60 of the Complaint and plaintiff's privity standing cannot be resolved under RCFC 12(b)(6) but must await full discovery and possible later summary judgment or trial determination.

2. **Even Using a Summary Judgment Standard and Going Outside the Complaint Text and Exhibits, the Government's Portrayal of the 2005 Assignment Documents Is Incorrect and Does Not Alter Plaintiff's Capacity to Sue for Damages for Seller's Breach of and Bad Faith Associated with the 1999 Asset Purchase Agreement.**

Court of Federal Claims Rule 12(b)(6) plainly states that a motion to dismiss that goes beyond the pleadings and the exhibits incorporated into the Complaint, and attempts to use discovery materials to obtain judgment, is to be treated as a motion for summary judgment, with evaluation under RCFC 56 after discovery and filing of statements of material facts not in genuine dispute. Summary judgment could be granted to the United States only if there were no material dispute that the plaintiff North Hartland failed to retain or reserve any contractual rights to sue for damages on the original 1999 contract between its predecessor and the United States agency RUS.

Though the 2005 assignment document was generous in assigning purchase rights to the Vermont, FERC License 2816 asset, paragraph 13 of the January 19, 2005 Assignment specifically reserves the seller plaintiff's rights to claim against RUS after the closing[1] under the assignment document:

> 13. Non-Interference. The Seller (including its owners, management member, family members, related and affiliated entities) and RUS have agreed to provide each other mutual concessions and mutual releases of liability. In the likely event that RUS chooses to again require these mutual concessions from the Seller as a condition precedent to Closing [with the new assignee] under the [1999] APA, then this matter is **exclusively reserved** to be between the Seller and RUS, **excluded** from this Agreement, and all such consideration, if any, to be paid or caused to be paid by RUS is to the sole and exclusive benefit of the Seller. **The Seller agrees not to pursue any claims against the RUS until after the closing under the APA. [ brackets for text added] [bold and underline added]**

Regardless of other language in the 2005 Assignment Agreement, the use of the terms " exclusively reserved"; "excluded"; and " pursue any claims against the RUS until after the closing under the APA" in ¶13, is evidence that future damages claims against RUS by the seller-plaintiff North Hartland were recognized by assignor and assignee, and that the right of North Hartland to seek these damages was reserved and not irretrievably "sold" in the January 2005 Assignment Agreement between North Hartland

---

[1]Plaintiff and the 2005 assignee Concord Hydro had to navigate a first closing between themselves and await a second closing when the RUS sold the Vermont 2816 asset to assignee Concord Hydro. The government has not produced any documents requiring that plaintiff release all claims against RUS as a condition precedent of the second closing–tender of the license 2816 asset to Concord Hydro. Plaintiff has requested in discovery that RUS produce all of its closing documents with Concord Hydro, including documents showing any price reduction afforded Concord Hydro based on Article III of the 1999 Asset Purchase Agreement, for expenditures made by buyer "on behalf of the RUS" to preserve the asset and its license.

and Concord Hydro. Certainly, ¶13 proves that there was no meeting of the minds between North Hartland of Virginia and Concord Hydro that North Hartland (Va.) was sacrificing all of its claim rights against RUS.

A. The Government Did Not Obtain Its Own Release from Plaintiff

The Government's motion notably lacks any support or RCFC 56 Affidavits from the 2005 assignee Concord Hydro that either: (a) refutes plaintiff's reservation of claim rights against the United States; or (b) declares that the only party that can wage a privity claim against the United States for bad faith breach of the 1999 Asset Purchase Agreement is the plaintiff's assignee Concord Hydro. The RUS of course learned about the 2005 assignment from Concord Hydro before it closed with the assignee Concord Hydro/North Hartland LLC of New Hampshire[2]; RUS also signed a Release and Satisfaction of Liens on the Vermont 2816 asset after the RUS was paid by assignee Concord Hydro/North Hartland LLC of New Hampshire.[3] See Exh. 1, March 30, 2005, Rural Utilities Service Release and Satisfaction of Liens. Even though the 1999 Asset

[2]To sustain licensing continuity at FERC, the 2005 assignment permitted Concord Hydro to assign a project name to the Vermont 2816 hydro-power asset of "North Hartland, LLC", a New Hampshire registered limited liability company, 2005 Assignment Agreement at p. 7, ¶3[c].

[3]The new assignee Concord Hydro notified FERC and the RUS about the assignment on January 19, 2005, well before closing between plaintiff and Concord Hydro in late March, 2005. FERC requested the actual Assignment document, but Concord Hydro's lawyers responded that the Assignment was proprietary and instead provided the Release documents from the RUS and the Vermont regulatory and municipal authorities. See FERC filing by Concord Hydro, March 31, 2005, attached as Exh. 2.

Purchase Agreement prohibited assignments of the purchase rights without the prior written consent of the RUS, ¶ 10.7 of 1999 APA, the Government, fervent to sell to anyone but plaintiff, did not bother to comply with this 1999 contract term and did not issue written consent prior to the 2005 assignment. More importantly, the RUS, despite issuing a broad release to the Assignee, never solicited or obtained a release of potential claims on the 1999 APA from the assignor, plaintiff North Hartland LLC of Virginia.

At the time RUS closed with the new assignee Concord Hydro, the RUS had been the recipient of strident demands to close on the 1999 sale contract and accusations of bad faith from plaintiff North Hartland for five years, see Complaint ¶s 1-20; RUS knew that plaintiff North Hartland of Virginia was committed, even after the assignment for consideration to Concord, to recovering its enormous engineering and FERC expenses poured into the Vermont 2816 project since 1999. The RUS may not have seen the text of the 2005 Assignment document until plaintiff produced it in this case. The RUS had no indication in 2005 that the Assignment eviscerated plaintiff's claim rights against RUS on the 1999 APA. Still, the RUS neglected to obtain any Release or settlement with plaintiff during or after the Assignment in 2005. The Government is hardly in a position to now cherry-pick pieces of what was supposed to be a proprietary, confidential document between private parties and assert those fruits as evidence that plaintiff "sold" its privity rights to claim for damages on the 1999 contract.

With respect to privity/claim rights in assignments, moreover, this Court and the

Federal Circuit have never used the exaggerated privity standing test amidst assignments that is argued by the United States. See, e.g., Home Savings of America v. United States, 399 F. 3d 1341 (Fed. Cir. 2005), rehearing denied; on remand, 69 Fed. Cl. 187, 70 Fed. Cl. 303( Holding company of separate thrift institution that was the actual signatory with Federal Government in assistance contract, had standing to sue the United States to recover cost of replacing goodwill eradicated by FIRREA amendment); Center Corp. v. United States, 52 Fed. Cl. 599 (2002)(Ultimate parent of thrift created by acquisition, although not a party to assistance agreement between injured thrift and United States, had privity standing to sue U.S. for breach of tax benefit provision, where only parent could have satisfied tax obligation); Entergy Nuclear Indian Point, LLC v. United States, 64 Fed. Cl. 515, 522 (Fed. Cl. 2005)(Assignee purchaser of standard contract with Government for disposal of Spent Nuclear Fuel was in sufficient privity of contract with United States to sue Government for breach of standard contract). Without supporting Affidavits from the assignee Concord Hydro and lacking other evidence, the United States cannot establish a meeting of the minds that the plaintiff's claim rights under the 1999 APA were "sold" away.

Plaintiff North Hartland LLC of Virginia remained an ongoing entity after signing the January 19, 2005 Assignment Agreement with Concord Hydro and after receiving payment from Concord Hydro in late March 2005. With ¶13 of the 2005 Assignment sufficiently preserving its rights to claim against the Government for bad faith breach of

the 1999 APA, and with no Release to the United States signed by plaintiff, North Hartland LLC of Virginia is free to pursue damage remedies against the RUS. Accordingly, the privity rights of plaintiff under the 1999 Asset Purchase Agreement, even after the 2005 Assignment, are sufficiently established to warrant summary judgment for plaintiff on this standing issue, or, at a minimum, are subject to material factual dispute precluding summary judgment for defendant.

Conclusion

The defendant United States Motion to Dismiss/Alternative Motion for Summary Judgment, should be denied.

Respectfully submitted,

/s/

John S. Lopatto III, Member Bar U.S. Court of Federal Claims
1725 Eye St., N.W., Suite 300
Washington, D.C. 20006
202-861-5800
Fax: 202-861-5802
Attorney for Plaintiff North Hartland LLC of Virginia

Service by ECF May 11, 2007

Exhibits

1. RUS Release and Satisfaction of Liens, March 30, 2005

2. North Hartland, LLC/Essex Hydro Letter to FERC, March 31, 2005, without exhibits