# In the United States Court of Federal Claims

No. 06-495C
(Filed August 27, 2007)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | |
| **NORTH HARTLAND, L.L.C.,** | Contracts; jurisdiction; motion to dismiss; conversion of motion to dismiss under RCFC 12(b); well-pleaded complaint; privity of contract. |
| Plaintiff, | |
| v. | |
| **THE UNITED STATES,** | |
| Defendant. | |
| * * * * * * * * * * * * * * * * * * * * * * * * | |

John S. Lopatto III, Washington, DC, for plaintiff.

Timothy P. McIlmail, Washington, DC, with whom was Assistant Attorney General Peter D.Keisler, for defendant. Helen Harris, Department of Agriculture, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER,** Judge.

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Defendant contends that the United States Court of Federal Claims lacks jurisdiction to the hear plaintiff's case because the complaint and accompanying documents fail to demonstrate privity of contract between plaintiff and the Government and plaintiff failed to reserve the right to sue the Government for damages in its subsequent assignment of the contract at issue. Plaintiff responds that jurisdiction is proper in this court, the assignment reserved the right to sue the Government for damages, and defendant's motion does not "qualify[] as a true motion challenging jurisdiction." Pl.'s Br. filed May 11, 2007, at 1. Argument is deemed unnecessary.

## FACTS

North Hartland, L.L.C. ("plaintiff" or "North Hartland"), a limited-liability company organized under the laws of Virginia, filed its complaint in the Court of Federal Claims on

June 30, 2006. The current controversy arises out of events surrounding the agreement and eventual contract to sell a hydroelectric power plant located on the Ottaquechee River, near North Hartland Lake, Vermont (the "North Hartland Lake plant").

The North Hartland Lake plant was originally owned and operated by Vermont Electric Generation & Transmission Cooperative, Inc. ("VEG&T"). In 1996 VEG&T voluntarily filed a Chapter 7 bankruptcy petition, listing the United States Department of Agriculture Rural Utilities Services ("RUS") as its largest creditor. The North Hartland Lake plant ceased operations in 1996 upon the filing of bankruptcy and the court appointed Gleb Glinka as the Chapter 7 bankruptcy trustee to handle VEG&T's bankruptcy estate (the "bankruptcy trustee"). The bankruptcy trustee ceded to RUS full authority to direct the transfer and delivery of VEG&T's assets in the North Hartland Lake plant to subsequent purchasers. In order to facilitate the sale of VEG&T's interests in the North Hartland Lake plant, RUS issued a Request for Proposal on April 28, 1998.

Contech Development Company, L.L.C. ("CDC") responded on June 16, 1998, with its proposal to purchase the North Hartland Lake plant. 1/ RUS accepted CDC's bid to purchase VEG&T's interest in the North Hartland Lake plant "as is" and notified CDC of this decision in a "letter contract" dated September 28, 1998. PX1 at 18. The letter contract served as the contract between CDC and RUS until the Asset Purchase Agreement ("the APA") was executed. The letter contract required all parties "to negotiate all terms and conditions of the APA expeditiously and in good faith . . . [and to] schedule an expeditious closing date which . . . [was] estimate[d] to occur on or about November 20, 1998." Id. On December 16, 1999, CDC, RUS, and VEG&T, acting by and though the bankruptcy trustee, executed the APA. The United States Bankruptcy Court for the District of Vermont approved and authorized the sale.

The APA laid out mutual obligations due upon closing: CDC was to pay to RUS a purchase price of $1.4 million; pay various taxes, utility bills and the Federal Energy Regulatory Commission ("FERC") license fees; and provide to RUS a release from liability from the Town of Hartland and proof that CDC had paid applicable fees and obtained requisite regulatory approvals. Correspondingly, RUS was to deliver to CDC a bill of sale; a record of existing regulatory approvals; a copy of the opinion of RUS's counsel demonstrating that RUS had authority to execute the agreement; a release of RUS's lien on VEG&T's interest in the purchased assets; and the necessary quitclaim deeds for conveyance

---

1/ In its complaint plaintiff refers to CDC as Hartland-Contech, drawing upon the fact that CDC later assigned its contract rights to North Hartland. The court uses CDC to refer to the party with which the Government originally contracted.

of the purchased assets. The APA required no specific payment obligations of RUS. The agreement called for RUS and CDC to work together using best efforts to discharge any encumbrances, although the closing was not to be delayed by any non-discharged encumbrances. Additionally, RUS, CDC, and the bankruptcy trustee agreed jointly to forward an Application for Approval of Transfer of License, Project 2816-001, to FERC. While providing no precise closing date, the APA contemplated a reduced sale price if closing occurred on or before March 15, 2000.

Closing failed to occur on or before March 15, 2000, or on any date subsequent. The sale to CDC, contemplated by the APA, never took place. CDC, however, retained the contractual right pursuant to the APA to purchase the plant. CDC later assigned this right to North Hartland, plaintiff in this action, although the documents submitted by both parties do not indicate the date on which this assignment occurred. 2/

Like the putative sale to CDC, the sale of the North Hartland Lake plant to plaintiff never occurred. Plaintiff complains that it suffered greatly in its dealings with RUS after the initial assignment of the contract rights took place. Plaintiff allegedly made several attempts to tender payment pursuant to the APA, but RUS consistently refused tender. See Compl. ¶ 19. 3/ Plaintiff also complains that RUS improperly refused to waive or adjust terms of the APA to compensate for increasing closing costs resulting from the perceived delays. See id. Plaintiff avers that RUS failed to assist plaintiff in navigating its way through FERC licensing proceedings and other proceedings; instead, RUS purportedly objected to and blocked plaintiff's appearance before these agencies and organizations. See id. ¶ 48(a). In 2003 FERC learned of a defect in the transmission line at the North Hartland Lake plant due to a material change made by VEG&T, without approval from FERC and in violation of federal law. FERC investigated this material alteration and subsequently ordered that the license be amended. Plaintiff alleges that RUS knew of this defect yet failed to disclose it to CDC or to plaintiff. See id.¶ 26. Meanwhile, in 2003 and 2004, RUS allegedly invited bids on the North Hartland Lake plant from other interested purchasers in violation of plaintiff's purported rights under the APA. See id. ¶ 52(a).

With dwindling financial resources and a vocalized, growing frustration with RUS, on January 19, 2005, plaintiff entered into an agreement with Concord Hydro Associates, LP ("Concord"), for the sale of Vermont Generating, LLC ("VGL"), and all of its equity interests under a document titled Agreement for the Purchase and Sale Vermont Generating,

---

2/ The court does not rule on the validity of this assignment.

3/ Plaintiff submitted no documentation to reflect attempted payments.

LLC Equity Interests ("APS"). See id. ¶ 58; DX22. 4/ In the APS, plaintiff represented that it was "formed in the Commonwealth of Virginia on October 6, 2004, to hold all of the equity interest in and to the Vermont Generating, LLC," and that VGL held the right to purchase the North Hartland Lake plant, under the APA, as the assignee of CDC. DX22 at 1, 3. 5/ Plaintiff further represented that "[t]he only assets of [VGL] are intangible contract rights relating to the North Hartland Project, including [plaintiff's] interest in the APA." Id. at 7. The APS recited that "[t]he transaction contemplated by this Agreement [was] a purchase by [Concord] and a sale by [plaintiff] of all equity interests in [VGL], which [plaintiff was to] convey to [Concord] free and clear of any claims and/or encumbrances on VGL, and free and clear of any claims or encumbrances of affiliated entities." Id. at 4.

Pursuant to the APS, Concord was to pay to plaintiff $465,000.00, plus allowable interest. Plaintiff was to "sell and deliver to [Concord], and [Concord was to] purchase and take title to and delivery of, all equity units of [VGL's] limited liability company interests owned by [plaintiff] (the "Shares"), representing 100% of the authorized, issued, and outstanding equity interests in [VGL] . . . ." Id. Plaintiff was to "prepare an assignment of

---

4/ The entity known as VGL, a New Hampshire limited partnership,

> was originally organized on October 13, 1998 under the name "Pawtucket Generating Company, L.L.C."; its name was changed to "North Hartland, LLC" on July 13, 1999; it was administratively dissolved by the New Hampshire secretary of State on November 1, 2002; and was reinstated by the New Hampshire Secretary of state under the name "Vermont Generating, LLC" ("VGL") effective December 9, 2004 . . . .

DX22 at 1.

On October 6, 2004, plaintiff, North Hartland, a Virginia domestic limited-liability partnership, was formed to hold all of the equity in the soon-to-be VGL. For the purposes of the APS, "the Company" refers to VGL; "Seller" denotes North Hartland, plaintiff in this action. Id. at 1.

5/ "[VGL] holds the right to purchase a 4-MW hydroelectric generating facility located at North Hartland, Vermont (the "North Hartland Project"), as assignee of Contech Development Company, LLC ("CDC"), under an Assets Purchase Agreement ("APA") among CDC, the Rural Utilities Services ("RUS"), and the Vermont Electric Generation & Transmission Cooperative, Inc. ("VEGT"), acting through Gleb Glinka, Esq., the Chapter 7 Trustee of the VEGT bankruptcy estate ("Glinka"), dated December 16, 1999 (the "APA") . . . ." DX 22 at 1.

Interest, in the form attached as Exhibit A, by which CDC and [plaintiff were to] release, discharge, and assign to [Concord] all right, title or interest that either has in [VGL] or the APA." Id. at 6. Assignment to Concord occurred on January 21, 2005.

RUS sold the North Hartland Lake plant to Essex Hydro Associates, LP/Concord Hydro Associates, LP (f/k/a Concord), in approximately January 2005. See Compl. ¶ 56. 6/ Plaintiff filed suit requesting damages for breach of contract against the Government on June 30, 2006. Plaintiff asserts that it expended "more than $850,000 in technical consulting services, legal expenses, project engineering, regulatory filing feeds, and in man-hours of managers of the plaintiff's limited liability company." Id. ¶ 49. Defendant moved to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction, arguing that plaintiff is not in privity of contract with the Government, and therefore its contract claim must fail pursuant to this court's jurisdictional statute, the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000).

**DISCUSSION**

1. Jurisdiction

Before a court may proceed to the merits of a case, jurisdiction must be established. PIN/NIP, Inc. v. Platte Chemical Co. 304 F.3d 1235, 1241 (Fed. Cir. 2002). Any party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any point in a proceeding. Arbaugh v. Y&H Corp., 546 U.S. 500, ___, 126 S. Ct. 1235, 1240 (2006); see also Booth v. United States, 990 F.2d 617, 620 (Fed. Cir. 1993).

"It long has been established, of course, that the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" United States v. Testan, 424 U.S. 392, 399 (1976) (alteration in original) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). Thus, the Court of Claims has no jurisdiction over a cause of action except to the extent that Congress has made a waiver of sovereign immunity. Testan, 424 U.S. at 399.

"[I]n a Court of Claims context, . . . a waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'" Id. (quoting United States v. King, 395 U.S. 1, 4 (1969)). "In the Tucker Act, Congress waived the federal government's

---

6/ Plaintiff assigned and transferred its equity interest in VGL only to Concord. Nothing in the record indicates the involvement of Essex Hydro Associates, LP, in the APS.

sovereign immunity but limited the jurisdiction of the Court of Federal Claims to hear claims 'against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort.'" Bd. of Trs. of Bay Med. Ctr. v. Humana Military Healthcare Servs., 447 F.3d 1370, 1374-75 (Fed Cir. 2006) (quoting Tucker Act, 28 U.S.C. § 1491(a)(1)); see also United States v. Mitchell, 463 U.S. 206, 212 (1983) ("[B]y giving the Court of Claims jurisdiction over specified types of claims against the United States, the Tucker Act constitutes a waiver of sovereign immunity with respect to those claims." (footnote omitted)); Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) (holding Tucker Act "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States, and . . . waives the Government's sovereign immunity for those actions.").

To assert a contract claim pursuant to the Tucker Act, as plaintiff proposes, "the contract must be between the plaintiff and the government and entitle the plaintiff to money damages in the event of the government's breach of that contract." Ransom v. United States, 900 F.2d 242, 244 (Fed. Cir. 1990). "In other words, there must be privity of contract between the plaintiff and the United States." Cienega Gardens v. United States, 194 F.3d 1231, 1239 (Fed. Cir. 1998). "The controlling axiom is that the United States may be sued only to the extent that it allows its sovereign immunity to be waived," United Electric Corp. v. United States, 227 Ct. Cl. 236, 240 (1981), and "[t]he effect of finding privity of contract between a party and the United States is to find a waiver of sovereign immunity." Cienega Gardens, 194 F.3d at 1239. Thus, plaintiff must allege privity of contract with the Government to support a finding that the Government's waiver of sovereign immunity by the Tucker Act is applicable – the jurisdictional requirement necessary for the Court of Federal Claims to entertain the suit.

2. Standard of review

Defendant moves for dismissal asserting lack of subject matter jurisdiction because plaintiff has failed to establish that it is in privity of contract with the Government. Once the court's subject matter jurisdiction is put into question, the burden of establishing subject matter jurisdiction falls upon the party seeking to invoke it. Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence.").

In ruling on a motion to dismiss for lack of subject matter jurisdiction, the court must accept as true the facts alleged in the complaint. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988). "Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or

for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995) (holding that in deciding motion to dismiss "court was obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor").

Despite this basic premise, however, if the movant challenges the factual basis for jurisdiction as set forth in the complaint, the court need not restrain its analysis to plaintiff's well-pleaded complaint. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993). Under a 12(b)(1) motion in this posture, "the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true." Thus, to determine whether the court has subject matter jurisdiction over plaintiff's claim, "a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings." Id. at 1584; see also Ferreiro v. United States, 350 F.3d 1318, 1324 (Fed. Cir. 2003) ("A trial court may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint . . . .")

3. RCFC 12(b)(1) motion to dismiss

In its motion to dismiss for lack of subject matter jurisdiction, defendant draws the court's attention to plaintiff's sale to Concord of VGL, the entity purportedly created to possess all rights to the North Hartland Lake plant. Specifically, defendant argues:

> Plaintiff's 2005 representations, warranties, and certifications [in the APS] establish that, if it ever was a party to the APA, it has not been a party to that contract or held any interest in that contract since, at least, January 21, 2005 – more than a year before it filed this action – when it sold VGL ("the Company") and VGL's rights in the APA to Concord and disclaimed any interest in the APA.

Def.'s Br. filed Apr. 10, 2007, at 6. 7/

While plaintiff rejoins with several arguments, it does not provide sufficient evidence to establish privity of contract between the Government and plaintiff. Plaintiff's arguments concerning the proper standards and procedures for addressing the appropriateness of

---

7/ Defendant, in its assertions and subsequent analysis, alludes to the argument that plaintiff may not have been a party to the original contract, or may not have had rights to the North Hartland Lake plant as an assignee of the original contracting party. The court declines to address these issues because they are neither relevant nor dispositive.

jurisdiction are intermingled, but can be separated into three basic contentions: 1) defendant's motion should be treated as an alternative summary judgment motion and dismissed because summary judgment is improper; 2) the well-pleaded complaint rule prohibits defendant from asserting, and the court from analyzing, material outside of the well-pleaded complaint; and 3) plaintiff, in fact, has established in its pleadings that it is in privity of contract with the Government.

1) Conversion of motion to dismiss pursuant to 12(b)

Plaintiff characterizes defendant's motion to dismiss pursuant to 12(b)(1) as "an alternative summary judgment motion attacking North Hartland's privity standing and real party in interest capacity under RCFC 17." Pl.'s Br. filed May 11, 2007, at 1. Plaintiff argues that because defendant's motion does not "qualif[y] as a true motion challenging jurisdiction, [it] cannot go beyond the facts pleaded in the Complaint." Id. at 2. Relying on the language of RCFC 12(b), plaintiff implicitly moves for the conversion of defendant's motion to dismiss for lack of subject matter jurisdiction into one for summary judgment and for the court's denial of summary judgment. See id. at 4. 8/ However, conversion would not be proper under a correct application of RCFC 12(b).

Plaintiff asserts that "[RCFC] 12(b)(6) plainly states that a motion to dismiss that goes beyond the pleadings and the exhibits to be incorporated into the Complaint, . . . is to be treated as a motion for summary judgment, with evaluation under RCFC 56." 9/ In comparison, RCFC 12(b) states, in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in RCFC 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by RCFC 56.

The plain text of RCFC 12(b) indicates that conversion pursuant to 12(b) is proper only if a motion to dismiss for failure to state a claim, pursuant to RCFC 12(b)(6), has been filed and

---

8/ Plaintiff argues that summary judgment is either premature or improper for defendant, but is proper for plaintiff. As plaintiff has not moved, the propriety of summary judgment for plaintiff is not at issue.

9/ Plaintiff quotes the language of RCFC 12(b), yet cites RCFC 12(b)(6). RCFC 12(b) provides for conversion to a summary judgment motion.

matters outside the pleadings have been presented to and accepted by the court. Conversion of a 12(b)(1) motion to dismiss into a summary judgment motion is not provided for by RCFC 12(b). Defendant's motion to challenge subject matter jurisdiction pursuant to 12(b)(1) is proper as filed and can be resolved as a motion to dismiss. As will be discussed, disputed facts in the context of a jurisdictional motion to dismiss are amenable to resolution without utilizing the summary judgment procedure for identifying disputed issues of fact.

2) The well-pleaded complaint

Plaintiff seeks to establish that defendant's motion to dismiss cannot succeed in the presence of plaintiff's well-pleaded complaint, which alleges facts that plaintiff retained the right to claim damages against the Government. Plaintiff urges the court to recognize that defendant's motion "cannot go beyond the facts pleaded in the Complaint, nor can [it] upset the RCFC 12 axiom that the averments in the Complaint – and inferences to be drawn from them – must be assumed to be true in evaluating a proper Rule 12 motion to dismiss." Pl.'s Br. filed May 11, 2007, at 2. Plaintiff argues further that "[a]n argumentative interpretation of a discovery document cannot meet the Conley v. Gibson, 355 U.S. 41, 45 (1957), standard of defendant having to show that no facts support the Complaint allegation of privity standing to sue the United States." Pl.'s Br. filed May 11, 2007, at 4. Specifically, plaintiff asserts that its well-pleaded complaint defeats "[d]efendant's picking bits and pieces out of two confidential 2005 assignment agreements between plaintiff and a third party . . . [and the] argument that plaintiff sold or lost his 1999 asset purchase rights." Id. at 2 (emphasis omitted).

Plaintiff's analysis of the well-pleaded complaint rule and its application to defendant's jurisdictional challenge to the complaint is misplaced. Plaintiff's reliance on Conley for the proposition "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts . . . which would entitle him to relief," no longer stands, given the United States Supreme Courts's recent decision abrogating this formulation from Conley. See Bell Atl. Corp. v. Twombley, 127 S. Ct. 1955, 1968-69 (2007) (retiring literal interpretation of Conley's "no set of facts" language "as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."); id. at 1977 (Stevens, J., dissenting) (recognizing that Supreme Court's decision today rejects Conley's formulation "'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (quoting Conley, 355 U.S. at 45-46)). In any case, such reliance by plaintiff is inapposite, because the principle has no bearing upon defendant's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Invoking RCFC 12(b)(1), defendant may put subject matter jurisdiction

into question, and the burden of establishing jurisdiction remains plaintiff's. See Reynolds, 846 F.2d at 748; see also McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936) ("If [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.").

Pursuant to RCFC 8(a)(1), a well-pleaded complaint must contain "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However a well-pleaded complaint alone is not sufficient when defendant's motion challenges the facts alleged in the complaint to establish jurisdiction. Defendant need not "show that no facts support the Complaint allegation of privity standing to sue the United States," Pl.'s Br. filed May 11, 2007, at 4, nor is defendant prohibited from "go[ing] beyond the facts pleaded in the Complaint." Id. at 1. In a challenge to the facts establishing jurisdiction, defendant can put forward, and the court can analyze, material outside the pleadings when the basis for subject matter jurisdiction is challenged. Although the court is normally not permitted to find facts in ruling upon a motion to dismiss, "[f]act-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged." Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999); see also Ferreiro, 350 F.3d at 1324 (Fed. Cir. 2003) ("A trial court may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint . . . ."); Reynolds, 846 F.2d at 747 ("If a motion to dismiss for lack of subject matter jurisdiction, however, challenges the truth of the jurisdictional facts alleged in the complaint, the district court may consider relevant evidence in order to resolve the factual dispute.").

Plaintiff conveniently ignores the related axiom that, when facts establishing jurisdiction are challenged, plaintiff must respond to the factual challenge with affirmative evidence. It is well established that "once . . . subject matter jurisdiction [is] put in question it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction . . . [because plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." Reynolds, 846 F.2d at 748. Faced with defendant's motion contesting the factual basis of jurisdiction, plaintiff must do more than merely reiterate the facts in its well-pleaded complaint: plaintiff must respond to defendant's challenge and put forth affirmative evidence to establish jurisdiction.

3) Privity of contract

Plaintiff's complaint affirmatively pleads the existence of a contract between plaintiff and the Government. Plaintiff alleges that it had "ma[de] a partial assignment limited to its purchase rights under the 1999 Asset Purchase Agreement, to another purchaser," Compl.

¶ 58, but avers that "[p]laintiff's contract rights and other legal remedies against RUS were reserved and not assigned." Id. ¶ 59.

Defendant's motion to dismiss draws plaintiff's continuing contractual relationship with the Government into question. Defendant's challenge to jurisdiction is grounded in an agreement between plaintiff and Concord for the sale and purchase of VGL. As defendant has emphasized, plaintiff represented in the APS that

> [VGL] holds the right to purchase . . . the North Hartland Project . . . , as assignee of Contech Development Company, LLC ("CDC"), under an Assets Purchase Agreement ("APA") among CDC, the Rural Utilities Service ("RUS"), and the Vermont Electric Generation & Transmission Cooperative, Inc. (VEGT), acting through Gleb Glinka, Esq., the Chapter 7 Trustee of the VEGT bankruptcy estate ("Glinka"), dated December 16, 1999 (the "APA") . . . ."

DX 22 at 1. Plaintiff asserted that VGL was "the sole entity holding the right to acquire the North Hartland Project, as set forth in the APA . . . ." Id. at 8. The APS recited that "[t]he only assets of [VGL] are intangible contract rights relating to the North Hartland Project, including [plaintiff's] interest in the APA." Id. at 7. On January 21, 2005, plaintiff sold VGL to Concord, transferring all of the represented equity interest in the company. Id. at 16. These representations of plaintiff in the APS and the certificate regarding transfer of the interest in VGL demonstrate that, as defendant argues, plaintiff "sold what it recited was CDC's assignee." Def.'s Br. filed May 24, 2007, at 4.

Plaintiff urges the court to "see that in ¶13 of the 2005 Assignment Agreement that plaintiff North Hartland reserved its rights to claim damages against the RUS based on the 1999 Asset Purchase Agreement between plaintiff and the Government signatories." Pl.'s Br. filed May 11, 2007, at 1. Paragraph 13 of the APS states:

> 13. Non-Interference
>
> The Seller (including its owners, management member, family members, related and affiliated entities) and RUS have agreed to provide each other mutual concessions and mutual releases of liability. In the likely event RUS chooses to again require these mutual concessions from the Seller as a condition precedent to Closing under the APA, then this matter is exclusively reserved to be between the Seller and RUS, excluded from this Agreement, and all such consideration, if any, to be paid or caused to be paid by RUS is to the sole and exclusive benefit of the Seller. The Seller agrees not to pursue any claims against the RUS until after the closing of the APA.

DX 22 at 13-14. "Regardless of other language in the 2005 Assignment Agreement, the use of the terms 'exclusively reserved'; 'excluded'; and 'pursue any claims against the RUS until after the closing under the APA' in ¶ 13, is evidence that future damages claims . . . by the seller-plaintiff . . . were recognized . . . and that the right of North Hartland to seek these damages was reserved . . . ." Pl.'s Br. filed May 11, 2007, at 5. Further, plaintiff argues that this provision of the APS proves that no agreement existed between plaintiff and Concord to assign to Concord plaintiff's right to file claims against RUS. See id. at 6.

Plaintiff's arguments regarding paragraph 13 of the APS fail to demonstrate that plaintiff reserved any rights under the APS or that plaintiff was otherwise in privity of contract with the Government after the sale of VGL to Concord. A close reading of paragraph 13 corroborates that the reservation of rights elaborated thereupon is conditioned upon subsequent action taken by RUS. Mention of exclusive reservation is dependent upon the "likely event [that] RUS chooses again to require . . . mutual concessions from the Seller as a condition precedent to Closing under the APA [with the new assignee, Concord]." DX 22 at 14. Likewise, although paragraph 13 of the APS stipulated that plaintiff would "not pursue any claims against the RUS until after the closing under the APA," these potential claims are dependent upon action by RUS to require "mutual concessions." Id. Thus, paragraph 13 only conditionally retains plaintiff's privity of contract with the Government, which depends on whether RUS requires mutual concessions of plaintiff at the time of closing. Plaintiff, however, has not provided any evidence that RUS required such concessions upon the closing with Concord or indicated even the slightest possibility that such concessions may be required of plaintiff in the future pursuant to the APA.

Further, the precedents upon which plaintiff relies to support its claim that it is in privity of contract with the Government are inapplicable. Plaintiff relies upon Home Savings of America v. United States, 399 F.3d 1341 (Fed. Cir. 2005), and Centex Corp. v. United States, 52 Fed. Cl. 599 (2002), 10/ although neither involves assignment of contract rights. Instead, as defendant demonstrates, these cases "involved whether a plaintiff had ever been in privity with the Government." Def.'s Br. filed May 24, 2007, at 7. Unlike in the case at bar, the parties in Home Savings of America were in a parent-subsidiary relationship, and privity of contract was found for the parent, which did not sign the agreement, based upon circumstances not present in plaintiff's claim. See generally Home Sav. of Am., 399 F.3d at 1349. In Centex, a non-binding precedent from the Court of Federal Claims, plaintiffs were a parent corporation and a consolidated group. Defendant moved to dismiss the parent

---

10/ Plaintiff, in its opposition brief, incorrectly cited the case upon which it chose to rely. References to and reliance upon "Center Corp. v. United States, 52 Fed. Cl. 599 (2002)," Pl.'s Br. filed May 11, 2007, at 8, are treated as referring to "Centex."

corporation for lack of standing because the agreement in question was between the consolidated group and the Government. The court found privity based upon express terms in the contract and an implicit contract covering a larger transaction. See generally Centex, 52 Fed. Cl. 599. The question of whether plaintiff was ever in privity with the Government relating to the North Hartland Lake plant is not before the court. The other Court of Federal Claims case cited by plaintiff, Entergy Nuclear Indian Point 2, LLC v. United States, 64 Fed. Cl. 515 (2005), dealt with establishing privity as an assignee, not retaining privity as an assignor.

Neither plaintiff's arguments concerning cases from the Court of Federal Claims and United States Court of Appeals for the Federal Circuit, nor its reiteration of facts pleaded in its complaint are sufficient to establish the basis for jurisdiction. Pursuant to the APS, plaintiff sold VGL, the sole entity possessing the right to purchase the North Hartland Lake plant. Plaintiff did not reserve, in this sale, the right to bring suit against RUS for damages resulting from the failed sale to plaintiff. Plaintiff only reserved the right to bring suit against RUS if RUS required additional concessions from plaintiff in the eventual sale to Concord. After purchasing VGL, Concord, with what appears to be a partner, purchased the North Hartland Lake plant from RUS. Plaintiff has failed to allege that RUS required concessions from plaintiff as a condition precedent to this sale, thus triggering plaintiff's reserved right to bring suit in response to these additional concessions. Simply put, as defendant argues, plaintiff sold its privity of contract with the Government to Concord and may not now assert it.

## CONCLUSION

Accordingly, based on the foregoing, the Clerk of the Court shall dismiss the complaint pursuant to RCFC 12(b)(1) without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

No costs.

s/ Christine O.C. Miller

______________________________

**Christine Odell Cook Miller**
Judge